Judge Owsley
delivered the opinion of the Court.
The now wife of Craig, was once the. wife of Edmond Singleton, and at his death became entitled to the life estate in one third of the slaves, then owned by Singleton, as her dower of the slaves. Sometime after the death of Singleton, his then widow, and now Mrs. Craig, married John Haw-bins, who for many years thereafter, and until his death, held the possession of the slaves now in contest, claiming them as the dower slaves of his wife, in the estate of her former husband, Singleton, and after bis death the slaves were held by his wife in the same right, until she subsequently married Craig, and he has continued to hold them ever since. — Administration of the estate of Hawkins having been granted to the present appellants, by the competent authority, and they conceiving that the life estate in the slaves, to which Mrs. Craig was entitled as the widow of Singleton, became vested in Hawkins, to whom she was married, whilst the widow Singleton, applied to Craig, after his marriage to her, and demanded the slaves, but he refused to deliver them, insisting that the right of his wife as the *255 ■widow of Singleton to the slaves survived to her upon the death of Hawkins, and that as the administrators of Hawkins, the appellants had no right to demand or receive the possession of them.
Detinue by Hawkins’ administrator.
Copy of the proceeding of the commissioners of the county court assigning the slaves to-Hawkins and wife, for dower in Singleton’s estate, offered, but rejected.
Question stated.
This action of detinue was then brought by the appellants as the administrators of Hawkins, against Craig and his wife for the slaves.
Mon delinet was pleaded by Craig and wife; and on the tial of that issue, the appellants, for the purpose of proving that the slaves were actually assigned to Mrs. Craig, whilst she was the wife of Hawkins, as the dower of the slaves of her first husband, Singleton, introduced as evidence a copy from the records of the county court of Jessamine county, of an order made by that court, upon the application of Hawkins, appointing commissioners to assign to the then- wife of Hawkins, and former widow of Singleton, her dower in her deceased husband’s estate, also the report of the commissioners to court, made in pursuance of the order appointing them, and containing an assignment of the slaves in the contest to the then Mrs, Hawkins, as her dower slaves, together with the order of the county court, approving the report of the commissioners, and directing it to be recorded. By this copy it appears that although the commissioners who were appointed by the court, were qualified to the report made by them, before it was admitted to record, it does not appear that they took the oath required by the law upon such subjects, before they proceeded to the duties assigned them by the order under which they were appointed; and because the copy did not show that the oath had been administered to the commissioners before they acted, the circuit court excluded the copy from being used as evidence before the jury. The first question therefore, that demands notice, involves the correctness of that decision.
if admitting the slaves to have been assigned to Mrs. Hawkins, in the lifetime of Hawkins, as her dower in the slaves of her former husband, Singleton, 'and if admitting that they were possessed by Hawkins in his lifetime, under the assignment to *256 his wife, that notwithstanding, upon the death of Hawkins, they survived to Mrs. Hawkins as his survivor, it will at once be perceived that the appellants cannot have been injured by the decision which went to exclude the copy from being used as evidence to the jury. For the object intended by introducing the copy, was to establish hi Mrs, Hawkins, a dower right in the slaves, as the late widow Singleton, and of course, if after the death of Hawkins, that right survived to her, it is totally immaterial as respects the claim of the appellants, whether or not dower of the slaves of Singleton was ever assigned to her. Before the rejected evidence can, therefore, be known to be material to any point in issue between the parties, it is necessary that we should enquire as to the right which a husband acquires to slaves possessed by him, under an assignment of dower to his wife during coverture out of the estate of her former husband, the dower right of the wife in slaves, vests entirely and absolutely in the husband, then, upon the death of the husband in the lifetime of the wife, that right must pass to his representatives, and cannot survive to the wife, and facts designed to be established by the rejected copy, would of cour.-e be material to the right claimed by the appellants in their characv ter of administrators of Hawkins,
Feme’s estate of dower in .her first husband’s lands, survives to her on her second husband’s death.
Statute making slaves real estate for certain purposes,
If the right which a husband acquires in the dower slaves of his wife be of the same sort as that which he is entitled to in her dower lands, we would readily admit that after the death of the husband it would survive to the wife, and not pass t<? the representatives of the husband.
But we apprehend that the right which a husband acquires to the dower slaves of his wife, is essentially different from that which he is entitled to in her dower land. We know that by a provision contained in the act of the Legislature of this State, is declared that “all negro, mulatto or inriiau slaves, in alt courts of judicature and other places within this Commonwealth, shall be held, taken and adjudged to be real estate, and shall descend to the heirs and widows of persons departing this life, *257 as laucls are directed to descend, &c. and were there no other provision in the act calculated to repel the conclusion, there would, we acknowledge, be great plausibility in contending that the right acquired by a husband in the dower slaves of his wire, is not greater than that which he is entitled to in her dower lands.
Slaves are far
®3tate °[ 1,10 aTth”1» riage, and whatever of comedo her, during tiie cover-th^husUn?
Slaves assign-fi'JIt'hus-band’s estate, reduced to possession by her second not^surviVe to her on his death, but ccutorWSeX" cemor.
*257 But the act contains many other provisions, all of which would require a useless waste of time to particularly notice, but which we would remark in general, goes conclusively to show that notwithstanding the provision cited, slaves to most purposr es are still treated as personal chattels.
There is one section of the act which goes explicitly to place the right of a husband to the interest of the.slaves of his wile on the footing of chattels, That section provides that, “where any slave or slaves have been, or shall be conveyed or bequeathed, or have or shall descend to any feme covert, the absolute right, properly and interest of such slave or slaves, is hereby vested, and shall accrue to, and he vested in the husband of such feme covert, and where any feme sole, is or shall be possessed of any slave or slaves, the same shall accrue to, and be absolutely vested in the husband of such feme, when she shall marry.” This section as well as most of the other provisions of the act were taken from the acts of the Virginia Legislature in force at the separation, and by the appellate courts of that State and this have been repeatedly decided to place the right of husbands to the interest of slaves, whether belonging to their wives at the time of marriage, or accruing to them during coverture upon the footing of chattels. Wallace and wife vs. Taliaferro and wife, 2 Call 447; 2 Hen. and Mun. 381; Pinkard, &c. vs. Smith and wife, Littell's selected cases, 331; Banks vs. Marksberry, 3 Littell, R. 275,
In neither of the cases to which we have referred, did the question arise as to what right the husband acquired in dower slaves of his wife, but they all involved the question of right in the husband to slaves of his wife, and they all recognize the prin *258 ciple, that since the passage of the act of’Virginia, fyom which the act. of tills country was copied, the husband is entitled to the same right to slaves owned by his wife at the time of marriage, or which ac-eructo her during coverture, that he would be cn-titled to, were they to every purpose chattels only, so that whether the wife has an estate in fee simple in a slave, or but an estate for her life only, and whether she came by the estate by her own act, or by operation of the law, the principle is the same, anc| t}ie right, be it greater or leas, vests as chattel:: do vest in the husband, if reduced to his possession during coverture. It follows therefore, that if the slaves in contest belonged to Mrs. Craig whilst slw was the wife of Hawkins, and they were actually reduced by him, to his possession, though in right of his wife’s dower, only the entire right of his wife vested in him, and at his death, that right parsed to the appellants as his administrators.
Copy of the ttLC°countS °f court and its commissioners, assigning slaves', “ ' evidenc^for a party claiming the assignment.
Commissioners to assign dower, ought 1.o be sworn before they .set, and not being worn mginay'bfi' erroneous, nut n°t vpM> i1111* compeTent™ evidence,
*258 Was it then correct in the court below to reject the copy of the record of the county court of Jes-sairt'mei which was offered by the appellants to prove that the slaves in contest, wore assigned to the wife of Hawkins, now Mrs. Craig, in the lifetime of Hawkins, as her dower in the slaves of her former husband Singleton?
There is evidently no pretext for objecting to the admissibility of the copy on the ground of any lack of jurisdiction in the county court of Jcssa-mjI)e j-0 ma¡5e the order it did, appointing commissioners to assign the dower. Singleton resided in that county, and died there, and the slaves were also possessed by Hawkins and his wife in that county, and under the act of tlie Legislature, upon that subject, the county court of Jessamine had complete jurisdiction to make the order, and cause dower to he assigned of the slaves.
Strictly speaking, the commissioners ought, no doubt, to have taken the oath prescribed by the act, before they entered upon the duties assigned them, by the order under which they were appointed, but their having failed to do so does not, we apprehend, render the assignment of dower absolutely void, it *259 L incumbent upon tbe court to approve wliat the commissioners did before their report was admitted to record, and though the commissioners may not have been qualified before they proceeded act, they appear to have been sworn to their report before it was recorded. The irregularity in taking the oath cannot, therefore, under these circumstances render the whole proceedings void; at most, it could make the proceedings erroneous only, and until reversed, must have all the force of a regular assignment of dower. The copy should therefore have been permitted to go in evidence to the jury, and the court erred in rejecting it.
Mandate,
Crittenden and Hewitt, for appellants; Depew and Payne, for appellees.
The judgment must consequently he reversed with cost, the cause remanded to the court below, and further proceedings there had, not inconsistent with this opinion.